# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| IRA ALSTON, | : | |
| plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:16-cv-1295 (AVC) |
| | : | |
| SALIUS, ET AL., | : | |
| defendants. | : | |

## **RULING AND ORDER**

The plaintiff, Ira Alston, confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case pro se under 42 U.S.C. § 1983, challenging his security classification.  The defendants are lieutenants Scott Salius, Meulmans and Alexander; correctional officer Harry Marquiss; district administrator Remi Acosta; directors of security Dennis Jones, Michael P. Lajoie, Kimberly Weir and C. Whidden; unit administrators/wardens Jeffrey McGill, Wayne Choinski, Angel Quiros, Edward Maldonado, Anne Cournoyer, Peter Murphy and Carol Chapdelaine; and commissioners Brian Murphy, Theresa Lantz, Leo C. Arnone, James Dzurenda and Scott Semple.  All of the defendants are named in their individual capacities for damages and in their official capacities for declaratory and injunctive relief.

Under section 1915A of title 28 of the United States Code,

the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Id. In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010)

2

(discussing special rules of solicitude for pro se litigants).

**FACTS**

The complaint alleges the following facts: The defendants, Murphy, Lantz, Arnone, Dzurenda and Semple, have created or continued a policy designating certain groups, believed to be predominately located in urban areas as security risk groups ("SRG"). They have not recognized certain violent gangs believed to be predominately located in suburban areas as SRG. Thirteen groups have been recognized as SRG.

These defendants also have created or perpetrated procedures used to identify, designate and manage SRG members and SRG safety threat members. All SRG members and safety threat members are segregated in a restrictive housing unit apart from the general prison population on close custody status. Any inmate found guilty at a disciplinary hearing for the offense of SRG affiliation is designated as SRG without further hearing. One criterion for SRG affiliation is possession or display of any materials, symbols, colors or pictures of an identified SRG or behavior uniquely or clearly associated with an SRG.

In 2002, the defendant, Brian Murphy, designated the gang known as the "Bloods" as an SRG. The defendants, Lantz, Arnone,

Dzurenda and Semple, have continued this designation. On December 26, 2003, the plaintiff, Alston, was issued a disciplinary report by the defendant, Salius, for SRG affiliation. The report stated that during a search of the plaintiff's cell, a correctional officer found a piece of paper with a list of gang-related codes. At the time, Alston shared a cell with inmate Giovanni Torres. Inmate Torres was a documented SRG Safety Threat Member ("SRGSTM") of the "Crips." Salius knew of the plaintiff's housing assignment and Torres' designation prior to issuance of the disciplinary report.

On December 29, 2003, Salius came to the cell and told Alston that correctional officials had no reason to believe that he was a member of the SRG Bloods. Id. ¶ 32. He also stated that the disciplinary report would be treated as a charge for possession of contraband, which would militate against designating Alston as an SRG member. Id. ¶ 33. During that conversation, inmate Torres told Salius that the paper belonged to him, not to the plaintiff.

The disciplinary report identified no witnesses, did not list any physical evidence to support the charge of SRG affiliation and did not indicate with which security risk group the codes were associated. On December 29, 2003, disciplinary

4

investigator St. John interviewed Alston. Alston entered a not guilty plea, requested assistance of an advocate, asked to seek all evidence against him and identified inmates Copeland, Arzuaga, Ruffino and Torres as witnesses on his behalf. St. John failed to record Alston's evidence request and denied inmate Torres as a witness because he exceeded the limit of three witnesses. St. John obtained statements from inmates Copeland, Arzuaga and Ruffino, all of whom were designated SRGSTM Bloods, stating that the plaintiff was not a member of the Bloods.

The defendant, Marquiss, was Alston's advocate. On January 2, 2004, Alston met with Marquiss. Alston provided him a six-page handwritten statement, created prior to the conversation with defendant Salius, asked to see any evidence that would be submitted at the hearing and asked him to interview the identified witnesses and provide their statements to him. He also asked Marquiss to interview inmate Torres and the defendant, Salius, regarding the December 29, 2003 conversation. Marquiss did not honor any of Alston's requests and did not conduct an independent investigation or review the evidence. Marquiss recommended that the plaintiff be found guilty.

5

On January 7, 2004, at the disciplinary hearing before hearing officer Meulemans, Marquiss, the plaintiff's advocate, was not present.  The plaintiff's inmate witnesses were not permitted to appear and testify at the hearing.  The disciplinary report and reports from St. John and Marquiss were read.  Meulemans then told Alston that he had to show how he was not guilty of the charge.  Alston asked to present the testimony of inmate Torres.  Meulemans denied the request without reason.  Alston then asked to see the evidence against him but the request was denied.

Meulemans found Alston guilty of the charge, stating that the plaintiff's handwriting was identical to the handwriting on the paper listing the codes.  The hearing report failed to specifically describe the evidence supporting the plaintiff's guilt.  The defendant, Acosta, upheld the disciplinary finding on appeal.  At no time during the hearing was Alston told that as a result of the guilty finding, he was designated as Bloods member.

In August 2004, Alston received a disciplinary report for fighting.  The defendant, Alexander, presided over the August 25, 2004 disciplinary hearing.  Alston was found guilty of the charge.  At no time during the hearing was Alston informed that

as a result of the guilty finding, he would be designated an SRGSTM. There were no allegations that the fight was SRG-related. Alston learned of his new designation from the hearing report. The defendants, Acosta, Jones and Lantz, denied his appeals and stated that the designation of SRGSTM was appropriate.

Under Department of Correction regulations, the Director of Security is required to review all inmates designated as SRG or SRGSTM every six months, to determine whether continued designation is appropriate. At no time during the past twelve years have the defendants, Lajoie, Jones, Whidden, Weir, Quiros, McGill, Choinski, Cournoyer, Maldonado, Murphy or Chapdelaine, conducted a review of the plaintiff's SRG or SRGSTM status. Alston believes that his designation would not have continued if the required reviews had been performed.

While confined as SRG or SRGSTM, Alston has been subjected to conditions of confinement in a restrictive housing unit that are different from the conditions of confinement in general population and other restricted confinement. He is not eligible for parole and cannot earn risk reduction credit. He can shower only three times per week and recreate only one hour per day, five days per week in handcuffs behind his back. He must wear

full restraints for all out-of-cell movement except showers and remain in his cell 23 or 24 hours per day. Alston is denied a television, certain clothing and footwear, use of exercise equipment, work and educational opportunities, and congregate religious services and is restricted to one hour of non-contact visits per week.

In 2008, the defendant, Lantz, created a policy, continued by defendants Dzurenda, Arnone and Semple, establishing a new SRG/SRGSTM point validation system. Under this system, every inmate considered for SRG or SRGSTM designation must meet a certain threshold number of points before the designation is applied. Beginning in 2008, Alston has submitted requests to Lantz, Arnone, Dzurenda, Semple, Weir, Whidden, Lajoie, Murphy, Chapdelaine, Quiros, Maldonado, Cournoyer and Choinski seeking re-classification under the point system. Although other similarly situated inmates have been evaluated under the point system, the plaintiff has not.

All of the defendants have used Alston's SRG designation to confine him indefinitely in restrictive housing. Between 2002 and June 2013, the defendants required all SRG inmates to complete a three-phase program prior to any consideration for removal of the designation and reintegration into general

8

population.  On June 7, 2013, Dzurenda created a new five-phase program, that Semple has continued.  When the new policy was implemented, all SRG inmates except the plaintiff continued to be held under the prior three-phase program.  Only Alston is required to complete the new five-phase program.

In light of the above allegations, Alston seeks compensatory and punitive damages totaling $3,547,500.80, as well as declaratory and injunctive relief.

## DISCUSSION

Alston includes four claims in his complaint: (1) violation of procedural due process regarding his SRG designation; (2) failure to conduct periodic reviews of his designation as SRG and SRGSTM; (3) violation of the equal protection clause relating to the change in policy for designating inmates as SRG and SRGSTM; and (4) violation of the ex post facto clause and equal protection clause relating to the change to the five-phase SRG program.

### I. Due Process Claim

#### A. Disciplinary Hearings

In his first claim, Alston contends that he was denied procedural due process at the 2004 disciplinary hearings that resulted in his designation as SRG and SRGSTM.

The limitations period for filing a section 1983 action is three years. See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994). Although the statute of limitations is ordinarily an affirmative defense, the district court "may dismiss an action sua sponte on limitations grounds in certain circumstances where 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.'" Walters v. Industrial and Commercial Bank of China, Ltd., 651 F.3d 280, 293 (2d Cir. 2011) (quoting Leonhard v. United States, 633 F.2d 599, 609 n.11 (2d Cir. 1980)).

Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action. See United States v. Kubrick, 444 U.S. 111, 122-24 (1979). Alston was immediately aware of his designation as SRG and SRGSTM following the hearings in January and August 2004. Thus, his claims accrued in 2004, twelve years before he filed this action.

The federal courts generally refer to state law for tolling rules. See Wallace v. Kato, 549 U.S. 384, 394 (2007). Under Connecticut law, the limitations period may be tolled for a continuing course of conduct. See Macellaio v. Newington Police

10

Dep't, 75 A.3d 78, 82 (Conn. App. 2013). The continuing course of conduct doctrine "has no application after the plaintiff discovers the harm." Rosato v. Mascardo, 844 A.2d 893, 899 (Conn. App. 2004). The harm need not have been known in its entirety to foreclose the applicability of this doctrine. See Intellivision v. Microsoft Corp., 784 F. Supp.2d 356, 371 (S.D.N.Y. 2011) (applying Connecticut law and stating that "[t]he plaintiffs confuse concealment of the extent of damage with concealment of the fact of damage; the latter may be grounds for tolling, but the former is not.").

As the plaintiff was aware of his injury in 2004. The fact that his continued confinement as an SRG or SRGSTM lasted twelve years is insufficient to toll the limitations period.[1]

Thus, Alston's claim is dismissed as time-barred. As the defendants, Salius, Meulemans, Alexander, Marquiss and Acosta, are referenced only in connection with the 2004 procedural due process claim, they are dismissed as defendants in this case.

---

[1] In addition, the court notes that some statutes of limitation may be tolled by application of the continuing course of conduct doctrine. However, "the continuing course of conduct doctrine classically applies to torts." See AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc., No 3:10-cv-01539(JAM), 2014 WL 7270160, at *14 (D. Conn. Dec. 18, 2014).

**B. <u>Lack of Review of Alston's Designation</u>**

In his second claim, Alston challenges the lack of periodic reviews of his designation as SRG and SRGSTM over the past twelve years. This due process claim is also time bared to the extent it is based on review peiods outside of the applicable statute of limitations period.

With respect to the continuing nature of this alleged violation, the defendants allegedly failed to review his status every six months. Each failure to review is a separate violation. Thus, in addition to the fact that the continuing course of conduct doctrine does not apply to a due process claim, the facts do not present a continuing course of conduct under state law. See <u>Freetown v. Protective Life Insurance Co.</u>, 73 A.3d 896, 901-02 (Conn. App. 2013), (concluding that insurance company's repeated failure to pay insured at precisely identifiable moments was not a continuing course of conduct. The Connecticut Appellate Court stated that the allegations "do not constitute a 'course of conduct' by the defendant; but instead allege a series of repeated breaches over a period of years.").

---

Therefore, this doctrine does not apply to Alston's due process claim.

While the claims in count two may state a cognizable claim with respect to the failure to review Alston's status during the three years prior to the filing of this action,[2] the plaintiff has not specified which defendants were responsible for these reviews. If the plaintiff wishes to proceed on a claim for failure to conduct status reviews during the three years prior to his filing of this action, he may file an amended complaint identifying the defendants responsible for those reviews.

II. **Equal Protection Claim – Failure to Consider Alston Under 2008 Standard**

In his third claim, Alston asserts an equal protection claim for failing to consider him under the 2008 standard for determining SRG and SRGSTM designation. As with the first claim, Alston has been aware of the new standard and that the standard has not been applied to him since 2008. In fact, he alleges that he has made numerous requests over the years to have the standard applied to him. Thus, as with the first claim, there is no continuing course of conduct. This claim is time-barred and dismissed.

---

[2] See Fluid v. Fischer, 568 F. App'x 70, (2d Cir. 2014) (remanding for district court to determine whether failure to conduct regular status reviews of inmate in administrative segregation violated constitutional due process).

## III. Equal Protection Claim – Five-Phase Program

In his fourth claim, Alston challenges the requirement that he complete the five-phase program, instituted in 2013, while other inmates were required to complete only the former three-phase program. He claims that this requirement violates the Ex Post Facto Clause and Equal Protection Clause.

"The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28 (1981) (quoting Cummings v. Missouri, 4 Wall. 277, 325-326, 18 L.Ed. 356 (1867)). To be considered ex post facto, the law must be retrospective and it must disadvantage the prisoner affected by the law. Id. at 29.

The second circuit has considered whether regulations which affect prisoners are laws for ex post facto purposes. In DiNapoli v. Northeast Regional Parole Comm'n, 764 F.2d 143 (2d Cir.), cert. denied, 474 U.S. 1020 (1985), the court of appeals considered the application of parole guidelines not in effect at the time the prisoner was sentenced. The prisoner was challenging a change regarding his offense severity rating, a factor considered in determining a parole date. The second

14

circuit held that because the regulation did not mandate a particular result, but was intended to guide agency discretion, it was not a law within the meaning of the Ex Post Facto Clause. Id. at 146.

Alston concedes that the new phase program was not applied to all inmates who were designated SRG or SRGSTM at the time of its adoption. Thus, it is not a mandatory requirement and does not constitute a law within the meaning of the Ex Post Facto Clause. This claim is dismissed.

Alston also alleges that, among all SRG and SRGSTM inmates at the time of adoption, the new program was applied only to him. This allegation is sufficient to state a plausible equal protection claim. Although he alleges that the new program was created by defendant Dzurenda on June 7, 2013, and continued by defendant Semple, he does not allege when the decision was made to require Alston to complete that program. Alston signed his complaint on July 25, 2016. As it appears likely that the decision to require the plaintiff to complete the five-phase program was made or reviewed after July 25, 2013, the equal protection claim will proceed against defendants Semple and Dzurenda.

**CONCLUSION**

The court enters the following orders:

(1) All claims against the defendants, Salius, Meulemans, Alexander, Marquiss and Acosta, as well as the claims for denial of due process resulting in Alston's classification as SRG and SRGSTM, failure to review his status prior to July 25, 2013, failure to apply the 2008 standard, and the ex post facto claim are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The case will proceed on the equal protection claim relating to application of the five-phase program against the defendants, Dzurenda and Semple. If the plaintiff wishes to proceed on claims for failure to conduct status reviews during the past three years, he may file an amended complaint identifying defendants responsible for conducting those reviews. Any amended complaint shall be filed within **thirty (30) days** from the date of this order and shall include only the claims for failure to conduct status reviews after July 25, 2013 and the equal protection claim regarding application of the five-phase program.

(2) **The clerk shall** verify the current work addresses of the defendants, Semple and Dzurenda, with the Department of Correction Office of Legal Affairs, mail a waiver of service of

process request packet containing the Complaint to each defendant at that address within **twenty-one (21) days** of this order, and report to the court on the status of those waiver requests on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on that defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) **The clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants, Semple and Dzurenda, in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4) **The clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this order.

(5) **The clerk shall** send a courtesy copy of the complaint and this ruling and order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(6) The defendants, Semple and Dzurenda, shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include any and all additional defenses permitted by the federal rules.

(7) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(8) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give

notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or their attorney of his new address.

(11) The plaintiff shall use the Prisoner Efiling Program when filing all documents with the court.

**SO ORDERED** this 30th day of November 2016 at Hartford, Connecticut.

                                              /s/
                                    Alfred V. Covello
                                    United States District Judge